RANDOLPH, Senior Circuit Judge,
dissenting:
I believe the district court correctly ruled that the limited partnership units sold to the Republic Property Corporation in the September 2005 transaction did not qualify as “securitfies]” under the Securities and Exchange Act, 15 U.S.C. § 77b(a)(1). Republic Property Trust v. Republic Properties Corp., 540 F.Supp.2d 144, 160-62 (D.D.C.2008). As the majority points out, some courts have held that limited partnership units are “investment contracts,” and thus “securities” under § 77b(a)(1). See Louis Loss, Securities Regulation 971 & n. 213 (4th ed.2007). Other courts have held that limited partnership units do not meet the definition. See id. at 983 & n. 215. The critical consideration is, as the Supreme Court held in SEC v. W.J. Howey Co., 328 U.S. 293, 301, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), “whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others.”
In later cases, Howey’s “solely from the efforts of others” has come to mean “predominantly” from the efforts of others. SEC v. Life Partners, Inc., 87 F.3d 536, 545, 548 (D.C.Cir.1996). Judge Friendly, a judge with deep experience in securities law, held that courts making that assessment should not “attach decisive significance to mere legal formality” and should “disregard[ ] form for substance ..., placing emphasis upon economic reality.” SEC v. Aqua-Sonic Prods. Corp., 687 F.2d 577, 584 (2d Cir.1982) (Friendly, J.). Howey itself said as much, 328 U.S. at 299, 66 *343 S.Ct. 1100, as have later Supreme Court opinions. See, e.g., United Housing Found., Inc. v. Forman, 421 U.S. 837, 848, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975); Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967).
Here, defendants Kramer and Grigg, experienced commercial real estate investors, were on both sides of the transaction. See Republic Property, 540 F.Supp.2d at 161. On one side was the Republic Property Corporation. Kramer owned 85 percent of the Corporation; Grigg owned the remaining 15 percent. On the other side of the transaction was the real estate investment trust or “REIT,” which had formed the limited partnership and managed it as its sole general partner. Kramer and Grigg, with one other colleague, established the REIT. And when the parties executed the sales agreement in September 2005,* Kramer and Grigg served as two of its three trustees. Grigg was President, Chief Development Officer, and Vice-Chairman of the board of trustees; Kramer was Chairman of the board of trustees. The Limited Partnership Agreement provided that “No Limited Partner ... (other than ... any officer, director, ... or trustee of the general Partner ...) shall take part in the operation, management or control ... of the Partnership’s business.... ” Partnership Agreement § 8.2 (emphasis added).
In short, the profitability of the limited partnership depended on the efforts of Kramer and Grigg, and Kramer and Grigg were the sole owners of the corporation who sold the West Palm Beach contract to the limited partnership. The limited partnership units therefore cannot possibly be “securities” under the Howey test. The Supreme Court formulated its test in light of one of the main purposes of the securities laws — to ensure that investors who will rely on a company’s management receive “full and fair disclosure” regarding the securities they are purchasing. Howey, 328 U.S. at 299, 66 S.Ct. 1100; see Tcherepnin, 389 U.S. at 336, 88 S.Ct. 548. The majority’s conclusion disregards this essential premise. To hold — as the majority does that Kramer and Grigg had a legal obligation to provide information to themselves is to render the securities laws senseless.
The majority’s only justification for its result is that the court should not “pierce the corporate veil.” Why this common law concept has anything to do with this case is a mystery. This is a federal action under Rule 10b-5, and never in the long history of that provision has the definition of security depended on the “corporate veil” concept. If the majority has a reason, any reason, for now departing from this line of authority, one would have expected it to be shared with us. Yet nothing emerges.
The majority has severed the corporate veil doctrine from its foundation. To refuse to pierce the corporate veil is to refuse to impose liability on corporate officers and directors for corporate wrongdoing. Yet Rule 10b-5 itself does the opposite. The securities laws subject individual officers to liability for misstatements of material facts. Plaintiffs here know that full well, which is why they sued not only the corporation but also Kramer and Grigg.
I can see no reason — and the majority offers none — for using the corporate veil concept, developed in a different context, to hold that “others” in the Howey test means only the corporation, not the owners and managers of the corporation. If the selling corporation is owned and managed by two individuals — as it was here— *344 and if those same individuals control and manage the entity investing in that corporation — as here — the investor cannot be relying on the efforts of “others” to make a profit. That, in Judge Friendly’s words, is the economic reality. The transaction at issue in this case therefore did not involve securities and the district court correctly dismissed the complaint.

 Plaintiffs admit that the relevant transaction for purposes of their securities fraud claim was the Development Contribution Agreement executed on September 23, 2005, when Kramer and Grigg were two of only three trustees. Am. Compl. ¶¶ 18, 88-90.